**In re HSSI, INC., a Delaware Corporation f/k/a Hartmarx Specialty Stores, Inc., et al., Debtors.**

Bankruptcy Nos. 93 B 26742, 93 B 26744 to 93 B 26746, 93 B 26748, 93 B 26752, 93 B 26754, 93 B 26755, 93 B 26757 and 93 B 26760 to 93 B 26777.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Jan. 11, 1995.

**810**

Avrum Dannen, Scott Clar, Dannen, Crane, Heyman & Simon, Chicago, IL, for debtors.

Richard Friedman, Dept. of Justice, Chicago, IL, for U.S. Trustee.

Richard A. Levy, Latham & Watkins, Chicago, IL, for Congress Financial Corp.

David N. Missner, M. Gretchen Silver, Rudnick & Wolfe, Chicago, IL, for Maurice L. Rothschild & Co.

1. The subsidiaries involved in this matter are: Frank Bros., Inc., Baskin Clothing Co., Capper & Capper, Ltd., F.B. Silverwood, C.N. Vicary Co., The Ray Beers Clothing Co., James K. Wilson Co., Men's Market Service Corp., HSSI Retail Marketing and Merchandising Corp., Hastings Clothing Co., Wallach's Inc., Walker's Tremont,

Daniel Zazove, Siegan, Barbakloff, Gomberg & Kane, Chicago, IL, for Committee of Unsecured Creditors.

John W. Butler, Eric Ivester, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL.

Eric N. Macey, Donald A. Tarkington, Novack & Macey, Chicago, IL.

J. Mark Fisher, Peter L. Harris, Schiff, Hardin & Waite, Chicago, IL.

Timothy Harris, Wilson & McIlvaine, Chicago, IL.

### MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

## I. INTRODUCTION

The United States Trustee ("UST") charges fees based on "disbursements" made by chapter 11 debtors. In these related cases the UST alleges that the Debtors underpaid fees because they did not count transfers among various Debtors themselves as "disbursements." The Debtors and two of their largest creditors objected to the UST's interpretation of "disbursement," contending that inter-company transfers are not "disbursements." The Court holds that a "disbursement" under 28 U.S.C. § 1930 is a payment of a claim or an expense incurred by the debtor. The Debtors did not underpay the quarterly fees under § 1930; accordingly, the UST's motion for payment of additional fees is denied.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

## III. FACTS

The Debtor, HSSI, Inc., and its subsidiaries,[1] filed voluntary chapter 11 petitions for

Inc., Jack Henry Clothing Co., Wolf Bros., Inc., Liemandt's, Inc., Raleighs Clothiers, Inc., Wolff's Clothiers, Inc., F.R. Tripler & Co., Littler's, Inc., Klopfenstein's, Inc., Root's, Inc., Porter's–Stevens, Inc., A.L. Zachry Co., Leopold, Price & Rolle, Inc., Hagstrum Bros. Inc., and Peer–Gordon, Inc.

relief on December 21, 1993. The Debtors, as debtors-in-possession, operated approximately 92 retail clothing stores in 24 states.[2] By court order on December 22, 1993, all twenty-seven chapter 11 cases were administratively consolidated, but they have never been substantively consolidated.

The subsidiaries operated the stores. HSSI did not operate stores, but it acquired inventory which it consigned to its subsidiaries. The relationship between the subsidiaries and HSSI is governed by the Consignment and Operating Agreement dated September 17, 1992 ("Operating Agreement") that states: "HSSI transfer[s] to the Subsidiaries on a consignment basis inventory for sale to retail customers ... all inventory delivered to the Subsidiaries and all proceeds from the sale thereof constitute the property of HSSI (and not the subsidiaries), and all such inventory and proceeds thereof are subject to the security interest and liens of Congress." The subsidiaries incurred no expense in the purchase of inventory and had no ownership interest in the inventory or cash proceeds from their sale.

Congress Financial Corporation made loans to HSSI pursuant to a Loan and Security Agreement ("Loan Agreement") dated October 22, 1993. All obligations incurred under the Loan Agreement were guaranteed by the subsidiaries and secured by first priority perfected liens on all of the Debtors' assets. On January 7, 1994, this Court entered an order ("DIP Financing Order")[3] authorizing the debtor-in-possession to obtain financing and continue under the revolving line of Credit between it and Congress under the Loan Agreement.[4] Under the DIP Financing Order, HSSI borrowed funds from Congress and then used those funds to purchase inventory that was consigned to the subsidiaries. The subsidiaries sold the inventory through the retail stores.

According to the DIP Financing Order and the Loan Agreement, the Debtors turned over to Congress all proceeds from Congress' collateral; including those from the sale of inventory consigned by HSSI to the subsidiaries. This was accomplished through a central cash management system, pursuant to the DIP Financing Order, in which (1) the sale proceeds from the subsidiaries were deposited daily into local blocked bank accounts; (2) these deposits were transferred daily to a "concentration" account at LaSalle National Bank[5] in the name of Congress for the benefit of HSSI, and (3) the funds in the LaSalle account were then transferred daily to Congress' account at Chemical Bank.

On May 31, 1994, the UST sent the Debtors a demand letter summarizing the disbursements of the Debtors for the fourth quarter of 1993 and the first quarter of 1994 based on the Debtors operating reports. The UST asserted that the subsidiaries' transfers from the blocked accounts to the concentration account at LaSalle constitute "disbursements" that are properly assessable under § 1930 and account for the underpayment. The amount of the underpayment the UST requests is $51,250.[6] In response, on December 8, 1993, the Debtors filed their Motion to Determine Sufficiency of Quarterly

---

2. 11 U.S.C. §§ 1107 & 1108 authorize the Debtors as debtors-in-possession to operate their business. Many of the stores have been closed since these cases were filed, and the Debtors recently sold the remainder.

3. The order provided: (1) authorization for the debtors-in-possession to incur post-petition secured indebtedness; (2) grant of secured interests and priority pursuant to 11 U.S.C. § 364; and (3) modification of the automatic stay.

4. Paragraph 9 of the DIP Financing Order states: "in accordance with the Operating Agreement, all inventory delivered [by HSSI] to and any Subsidiary and all proceeds thereof (including, without limitation, all accounts arising from the sale thereof and all proceeds of such accounts) shall at all times be subject to all of the security interests and liens granted to Congress under the Pre–Petition Agreements and the DIP Agreements."

5. The local accounts and the account at LaSalle National Bank are referred to as "Blocked Accounts." The DIP Financing Order provides at Paragraph 16 that all collateral proceeds "upon such deposit [into the blocked accounts] shall become the sole and exclusive property of Congress, and shall be applied by Congress against the Pre–Petition Indebtedness and the DIP Indebtedness ..."

6. The UST claims that the Debtors underpaid $15,000 in the fourth quarter of 1993 and $36,250 in the first quarter of 1994.

Fee Payments, challenging the UST's definition of "disbursement". On June 15, 1994, the UST filed its Motion For An Order Directing Payment of Statutory Fees Assessable Under 28 U.S.C. § 1930. On June 29, 1994, the Debtors, Congress, and Hartmarx filed objections to the UST's motion.[7]

The dispute centers on the definition of "disbursement" under 28 U.S.C. § 1930 and whether quarterly fees are assessable on the subsidiaries' transfers of funds from their local bank accounts to the Congress account at LaSalle. The Court finds that the Debtors fully paid their assessable quarterly fees to the UST for the fourth quarter of 1993 and the first quarter of 1994. Accordingly, the UST's motion is denied.

## IV. STANDING

■ The UST asserts that Hartmarx and Congress lack standing to object to the UST's motion for payment of quarterly fees under 28 U.S.C. § 1930, because it is a contested matter under Bankruptcy Rule 9014 between the Debtor and UST that is not subject to Rule 7024 intervention by non-parties. Only the Debtors are obligated to pay the quarterly fees. Therefore, the UST argues, the Debtor and the UST are the only proper parties to this issue. Hartmarx argues that it is a "party in interest," and should not be denied the right to be heard.[8]

Both Hartmarx and Congress are "parties in interest" that would have the right under § 502 and Rule 3007 to object to proof of a pre-petition claim. Although the Bankruptcy Code does not provide a definition, courts have held that a "party in interest" is a party who has a pecuniary interest in the estate being administered. *In re The Charter Company, et al.,* 68 B.R. 225, 227 (Bankr. M.D.Fla.1986); *Kapp v. Naturelle, Inc.,* 611 F.2d 703, 706 (8th Cir.1979).[9]

The UST has provided no authority for its proposition that "parties in interest" have no standing to assert objections under § 1930. Hartmarx is the Debtors' largest unsecured creditor holding a $46 million unsecured claim and a $2.5 million administrative expense claim against the estates. Congress is the post-petition lender under the DIP Financing Order, providing the funds necessary to allow the Debtors to continue operations. These claims clearly qualify Hartmarx and Congress as parties who have pecuniary interests in the administration of the Debtors' estates, because if the UST's motion were to be granted, it would require payment from the Debtors' available assets, depleting the amount available for distribution to the Debtors' creditors, such as Hartmarx and Congress. In terms of the effect on Hartmarx and Congress, there is little difference between a proof of a pre-petition claim and a request for payment of an administrative expense. Both may diminish the funds available to other creditors; indeed, since administrative claims have priority over pre-petition unsecured claims, administrative claims have an even greater effect on unsecured claims. Accordingly, the Court finds that Hartmarx and Congress have standing to object to the UST motion for payment of quarterly fees.

## V. 28 U.S.C. § 1930 QUARTERLY FEES

■ The legislative history of § 1930 says that the UST was designed to be a self-funding program and not a profit-making arm of the government. H.R.Rep. No. 764, 99th Cong., 2d Sess. 22, *reprinted in* 1986 *U.S.C.C.A.N.* 5227, 5234–35; *In re Flowers by Mike & Ray, Inc.,* 95 B.R. 31, 34 (Bankr. D.Md.1988) (citing 132 Cong.Rec. H9000 (daily ed. Oct. 2, 1986) (statement of Rep. Hamilton Fish, Jr.)). Collection of fees under 28 U.S.C. § 1930(a)(6) provides a substantial

---

7. The Debtors in their memorandum claim a right to a $500 refund for quarterly fees allegedly paid by mistake. They have not filed either a complaint or a motion requesting such relief, so the $500 claim will not be considered.

8. Congress did not file a surreply to the UST's standing argument.

9. Section 502(a) states that a "claim or interest, ... is deemed allowed, unless a party in interest

... objects." The legislative history to § 502 recognizes that the Bankruptcy Code does not define "party in interest" and that "[t]he Rules and case law will determine who is a party in interest for purposes of objection to allowance." H.R. No. 95–595, 95th Cong., 1st Sess. 352 (1977); S.Rep. No., 95–989, 95th Cong., 2d Sess. 62 (1978) U.S.C.C.A.N. pp. 5787, 5848, 6308.

portion of the UST's funding. *Id.* at 32. Section 1930(a)(6) provides that the amount of the fees is determined by the amount of the chapter 11 debtor's disbursements:

In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until a plan is confirmed or the case is converted or dismissed, whichever occurs first. The fee shall be $250 for each quarter in which disbursements total less than $15,000; $500 for each quarter in which disbursements total $15,000 or more but less than $150,000; $1,250 for each quarter in which disbursements total $150,000 or more but less than $300,000; $3,750 for each for each quarter in which disbursements total $300,000 or more but less than $ 3,000,000; $ 5,000 for each quarter in which disbursements total $3,000,000 or more. The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed. . . .

Congress did not define the term "disbursement," and there is little case law and legislative history addressing the definition of "disbursement" under § 1930; *See Ozark Beverage Co., Inc.,* 105 B.R. 510, 511 (Bankr. E.D.Mo.1989).

 The UST argues that the Court must defer to its interpretation of "disbursement" in 28 U.S.C. § 1930 because the UST is responsible for administering the assessment of statutory fees under that section.[10] Under that assumption, the UST argues that "disbursement" covers any payment or transfer to another party, whether that party is a debtor in a bankruptcy case or not. Although a court must give deference to an agency's interpretation of a statute that the agency is responsible for administering, there are several qualifications to this deference. *First Gibraltar Bank, FSB v. Morales,* 19 F.3d 1032, 1035 (5th Cir.1994) (a court "must defer to the agency's interpreta-

tion of that statute as expressed in its regulations unless those regulations are arbitrary, capricious, or manifestly contrary to the statute"); *In re Resol Mfg. Co., Inc.,* 110 B.R. 858, 861 (Bankr.N.D.Ill.1990), citing *United States v. Cartright,* 411 U.S. 546, 550, 93 S.Ct. 1713, 1716, 36 L.Ed.2d 528 (1973) (an agency's interpretation of a statute "sets the framework for judicial analysis; it does not displace it.") A court must consider whether the agency's interpretation of a statute is consistent with the plain language of the statute and its purpose. *Id; See Kennedy v. Fritsch,* 796 F.Supp. 306, 308 (N.D.Ill.1992); *Office of the United States Trustee v. Hays Builders, Inc., (In re Hays Builders, Inc.),* 144 B.R. 778, 779 (W.D.Tenn.1992). Therefore, the Court must examine the UST's interpretation of "disbursement" in light of these limiting factors.

This Court declines to adopt the UST's interpretation of § 1930 and the term "disbursement" simply because it is the administering agency. Defining "disbursement" does not require an expertise unique to the UST that would encourage deference to its interpretation. This is evidenced by the UST's reliance on 26A C.J.S. Disbursement (1956) as authority for its interpretation of "disbursement" under § 1930. C.J.S. defines "disbursement" as it appears in Idaho's 1915 revenue code dealing with the misappropriation of public monies. That is not an apt comparison to "disbursement" in the present Bankruptcy Code. Further, the UST has not issued a regulation, which it could have done under § 586(a)(3)(D), supporting its interpretation of "disbursement." Without a regulation clarifying the definition of "disbursement," it would be possible to have a different interpretation of that term in every office of the United States Trustee across the country.

Because "disbursement" has not been defined by the Code, it must be interpreted according to its "ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62

---

10. 28 U.S.C. § 586(a)(3)(D) provides that the UST shall "supervise the administration of cases . . . by, . . . taking such action as the United States trustee deems to be appropriate to ensure that all reports, schedules and fees required to be filed under title 11 and this title by the debtor are properly and timely filed. . . ."

L.Ed.2d 199 (1979); *Hays*, 144 B.R. at 780. Some courts that have sought to define "disbursement" have looked to the definition in Black's Law Dictionary (6th ed. 1990) which defines "disbursement" as: "to pay out; commonly from a fund." *E.g. United States Trustee v. Wernerstruck (In re Wernerstruck, Inc.,)*, 130 B.R. 86 (D.S.D.1991); *Hays*, 144 B.R. at 780. In *Ozark Beverage*, 105 B.R. at 512, the Court held that the plain meaning of "disbursement" was "all expenses paid by a debtor-in-possession in a given quarter." Courts adopting this standard have found that a debtor's expenses of purchasing inventory to conduct the debtor's business,[11] operational expenses such as employee wages and taxes,[12] payments made by a debtor to a bank on a revolving line of credit,[13] and payments made through third parties for a debtor constitute "disbursements." [14]

■ "Disbursement" should be defined in accordance with the purpose § 1930 charging the UST with monitoring and administering the case. That statute provides a sliding scale so that fees are based on the size of the case. The size of the case should be measured by the level of real economic activity, not by mere bookkeeping entries. The greater the volume of economic activity, the more the UST must monitor, and the fees the UST receives will be measured accordingly. Disbursements should be a measure of that economic activity.

An examination of the economic reality of the Debtors' cash-management system makes clear that the inter-company transfers from the blocked accounts to the concentration account do not constitute "disbursements" in that sense. The real economic activity is the borrowing of funds by HSSI from Congress; the purchase and sale of inventory; and the repayment of the loan to

Congress. This is a coordinated system of payment for goods or services and the payment of debt. The inter-company transfers do not account for payments for goods, services or debt; they are not economic transactions. The subsidiaries deposited all proceeds of sales into this cash-management system, retaining nothing. The transactions at issue are merely bookkeeping entries and the means for tracking funds.

Even if each subsidiary owned its own inventory, the transfer of the sale proceeds from the subsidiaries to Congress would constitute the assessable "disbursements" by each individual subsidiary on account of that subsidiary's liability to Congress as guarantor of HSSI's debts. But the transfers from the blocked accounts to the concentration accounts do not represent the payment of any expense or obligation. Alternatively, HSSI could have had the subsidiaries deposit their sale proceeds directly into the concentration account, eliminating the blocked accounts, and achieved the same result through a less efficient system. Under either scenario, the UST would not be entitled to collect twice on the same funds. Nothing in § 1930 mandates a double fee simply because of an efficient cash-management system.

Accepting the definition of "disbursement" as expenses paid by the debtor representing real economic activity as consistent with the purpose of § 1930, the Court finds that the transfers of proceeds from the subsidiaries' blocked accounts into the concentration account do not constitute "disbursements." The transfers are one step in an integrated cash management system designed to pool the proceeds from the subsidiaries' sale of HSSI's inventory in order to make payments to Congress on HSSI's outstanding loan. Further, the number of transfers made is irrelevant because the collateral proceeds be-

---

11. *In re Flowers by Mike & Ray, Inc.*, 95 B.R. 31 (Bankr.Md.1988).

12. *In re Ozark Beverage Co., Inc.*, 105 B.R. 510, 511 (Bankr.E.D.Mo.1989).

13. *United States Trustee v. Wernerstruck, Inc. (In re Wernerstruck, Inc.)*, 130 B.R. 86, 88 (D.S.D. 1991).

14. *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1534 n. 11 (9th Cir.1994); *Office of the United States Trustee v. Hays Builders, Inc. (In re*

come property of Congress as soon as they are deposited into a block account.[15]

If all that was required to determine the number of disbursements made was to count the transfers from a debtor's account, without regard to the nature of the transfer, then the rehabilitative purposes of chapter 11 would be undermined because the UST would be able to collect multiple fees for a single economic transaction, placing a greater burden on a debtor, and making reorganization more difficult. That is not the intent of § 1930 which is only to help defray the costs of the United States Trustee Program, not to burden debtors with fees based on transactions that have nothing to do with the volume of business or the size of the case. "Disbursements" under § 1930 should therefore be limited to payments of claims or expenses.

Accordingly, the Court finds that the Debtors have not underpaid the UST's fees. Therefore, the UST's motion for payment of fees is denied.

---

*Hays Builders, Inc.),* 144 B.R. 778, 780 (Bankr. W.D.Tenn.1992).

**15.** Paragraph sixteen of the DIP Financing Order.