**In re HSSI, INCORPORATED, a Delaware Corporation, f/k/a Hartmarx Specialty Stores, Inc., et al., Debtors.**

**M. Scott MICHEL, United States Trustee, Appellant,**

**v.**

**HSSI, INCORPORATED, et al., Hartmarx Corporation, and Congress Financial Corporation, Appellees.**

**No. 95 C 1300.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 4, 1996.

Dean C. Harvalis, Richard Craig Friedman, Office of the United States Trustee, Chicago, IL, for M. Scott Michel, Trustee.

Avrum H. Dannen, Dannen, Crane, Heyman & Simon, Chicago, IL, for HSSI Incorporated.

### MEMORANDUM OPINION AND ORDER

COAR, District Judge.

The United States Trustee brings this appeal from the Bankruptcy Court in *In re HSSI, Inc.,* 176 B.R. 809 (Bankr.N.D.Ill. 1995) in which that court denied the Trustee's motion for payment of additional fees by HSSI and its twenty-seven subsidiaries, who are appellees in this action. The issue at hand is whether the subsidiaries made certain "disbursements" as that word is used in 28 U.S.C. § 1930(a)(6), which governs the payments of quarterly fees to the United States Trustee's Office. Because the decision is based upon an inadequate record, the decision is reversed and remanded for entry of orders consistent with this memorandum opinion.

### Jurisdiction and Standard of Review

 This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). Although the bankruptcy case has been closed pursuant to a Settlement Agreement, this court retains jurisdiction over this appeal. *See In re Statistical Tabulating Corp., Inc.,* 60 F.3d 1286 (7th Cir.1995), *cert. denied sub nom, LaSalle Bank Lake View v. United States,* —— U.S. ——, 116 S.Ct. 815, 133 L.Ed.2d 759 (1996). A District Court reviews the Bankruptcy Court's findings of fact for clear error, and its conclusions of law de novo. *In re C & S Grain Co., Inc.,* 47 F.3d 233, 236 (7th Cir.1995).

### Background

Debtor HSSI, Inc. and its twenty-seven wholly-owned subsidiaries (collectively, the "Subsidiaries") filed voluntary Chapter 11 petitions on December 21, 1993. *In re HSSI, Inc.,* 176 B.R. at 811. The Subsidiaries operated approximately 92 retail clothing stores in twenty-four states. *Id.* The cases were administratively consolidated on December 22, 1993, but the cases were never substantively consolidated. *Id.*

The Bankruptcy Court found that the Subsidiaries operated the stores using inventory that was consigned to them from HSSI. *Id.* HSSI did not operate the stores, but it did acquire the inventory that the subsidiaries sold. *Id.* This arrangement was governed by a Consignment and Operating Agreement (the "Operating Agreement") between HSSI and the subsidiaries. The Bankruptcy Court found that HSSI acquired inventory and transferred it to the Subsidiaries on a consignment basis and "the subsidiaries incurred no expense in the purchase of inventory and had no ownership interest in the inventory or cash proceeds from their sale." *Id.* at 811. Pursuant to the Operating Agreement, "all inventory delivered to the Subsidiaries on a consignment basis and all proceeds from the sale thereof constitute the property of HSSI." *Id.*

The Bankruptcy Court concluded that Congress Financial Corporation made loans

to *HSSI* pursuant to a pre-petition Loan Agreement. *Id.* The Loan Agreement was guaranteed by the Subsidiaries and secured by first priority perfected liens on all of the Debtors' assets. *Id.* On or about January 7, 1994, the Bankruptcy Court entered an order pursuant to section 364 of the Bankruptcy Code authorizing the debtor-in-possession to borrow from Congress on a secured basis post-petition. *Id.* HSSI used the proceeds of this borrowing to purchase inventory that was then "consigned" to the subsidiaries. *Id.*

The Bankruptcy Court characterized the post-petition course of dealings between the parties, pursuant to the DIP Financing Order and the Loan Agreement, as follows:

> [T]he Debtors turned over all proceeds from Congress' collateral, including those from the sale of inventory consigned by HSSI to the subsidiaries. This was accomplished through a central cash system, pursuant to the DIP Financing Order, in which (1) the sale proceeds from the subsidiaries were deposited daily into local blocked bank accounts; (2) these deposits were transferred daily to a "concentration" account at LaSalle National Bank in the name of Congress for the benefit of HSSI, and (3) the funds in the LaSalle account were then transferred daily to Congress' account at Chemical Bank.

*In re HSSI, Inc.,* 176 B.R. at 811.

HSSI made a quarterly payment of $250.00 to the Trustee's Office, pursuant to 28 U.S.C. § 1930(a)(6)[1] on its "disbursements" for the fourth quarter of 1993. Attachment B to Appellant's Brief in Support, Chart A. HSSI made a second quarterly payment of $5,000.00 to the Trustee's Office for the first quarter of 1994. According to the Bankruptcy Court, HSSI calculated its disbursements as including the funds that were transferred daily from the LaSalle "concentration" account to Congress' account at Chemical Bank. The Trustee argued below that (1) HSSI owes $5,000.00 for the fourth quarter of 1993 because its "disbursements" were over three million dollars in that time period, and (2) the Subsidiaries' transfers of funds from the local "blocked" bank accounts to the "concentration" account at LaSalle were "disbursements" from the *Subsidiaries* within the meaning of 28 U.S.C. § 1930(a)(6), and therefore both HSSI *and* the Subsidiaries should pay the Trustee fee based on the transfers. Indeed, the Trustee sent a demand letter to the Debtors' counsel to that effect on May 31, 1994, including a chart of the Trustee's version of the disbursements by both HSSI and the Subsidiaries. Attachment B to Appellant's Brief in Support, Chart A. The Bankruptcy Court concluded otherwise.

The Bankruptcy Court defined "disbursement" as "a payment of a claim or an expense incurred by the debtor." *In re HSSI, Inc.,* 176 B.R. at 810. The court thus concluded that the transfers of funds from the "blocked" accounts to the "consolidation" account were not disbursements, but rather, were "inter-company transfers [and] do not account for payments for goods, services, or debt; they are not economic transactions.... The transfers are one step in an integrated cash management system designed to pool the proceeds from the subsidiaries sale of HSSI's inventory in order to make payments to Congress on HSSI's outstanding loan." *In re HSSI, Inc.,* 176 B.R. at 814. The Bankruptcy Court noted that this conclusion was in accord with the Congressional intent behind 28 U.S.C. § 1930, which was to create a self-funding United

---

1. 28 U.S.C. § 1930(a)(6) provides:

(a) Notwithstanding section 1915 of this title, the parties commencing a case under title 11 shall pay to the clerk of the district court or the clerk of the bankruptcy court, if one has been certified pursuant to section 156(b) of this title, the following filing fees:

(6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until a plan is confirmed or the case is converted or dismissed, whichever occurs first. The fee shall be $250 for each quarter in which disbursements total less than $15,000; $500 for each quarter in which disbursements total $15,000 but less than $150,000; $1,250 for each quarter in which disbursements total $150,000 or more but less than $300,000; $3,750 for each quarter for which disbursements total $300,000 or more but less than $3,000,000; $5,000 for each quarter in which disbursements total $3,000,000 or more. The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.

States Trustees' Office, not a profit-making arm of the government. *Id.* at 812 (citing H.R.Rep. No. 764, 99th Cong., 2d Sess. 22, *reprinted in* 1986 U.S.C.C.A.N. 5227, 5234–35). The Bankruptcy Court struggled with the definition of "disbursement," and the Appellant urges a different formulation. However, this court concludes that the definition is not nearly as important in this case as the underlying factual basis for the conclusion that the Subsidiaries' transfers were not "disbursements" pursuant to 28 U.S.C. § 1930(a)(6). A more thorough explanation of the facts of this case (most specifically, the relationship between the parties) could glean a readily-discernible conclusion whether the transfers at issue are or are not "disbursements."

### Discussion

■■■ Although this court must use the "clearly erroneous" standard of review for the Bankruptcy Court's findings of fact, it may reverse and remand if the Bankruptcy Court failed to sufficiently delineate the evidentiary basis for its decision. *In re Excalibur Automobile Corp. v. Robinson,* 859 F.2d 454, 458–59 (7th Cir.1988); *see In re Envirodyne Industries, Inc.,* 29 F.3d 301 (7th Cir. 1994); *Aunt Mid., Inc. v. Fjell–Oranje Lines,* 458 F.2d 712, 718–19 (7th Cir.), *cert. denied,* 409 U.S. 877, 93 S.Ct. 130, 34 L.Ed.2d 131 (1972). This court will reverse and remand this proceeding because the Bankruptcy Court made insufficient factual findings upon which to base its legal conclusion that the subsidiaries were not required to pay the U.S. Trustee fee for the transfers from their individual holding accounts to the concentration account. For the purpose of this court's review, this court construes "disbursement" to mean—at least—a transfer of money by the debtor in possession where the debtor has some interest in that money.

The Bankruptcy Court's findings of fact regarding the Operating Agreement are not clearly erroneous. However, those findings are insufficient to determine whether the debtors in possession made a transfer of money in which it had an interest, and thus whether the Subsidiaries owed quarterly fees to the U.S. Trustee. The Subsidiaries sold inventory and, at the end of every day, transferred the cash proceeds from those sales into local "blocked" bank accounts. *In re HSSI,* 176 B.R. at 811. The funds in the "blocked" accounts were then transferred daily to the "concentration" account, which was in Congress' name, for the benefit of HSSI. *Id.* In a footnote, the Bankruptcy Court explained that the DIP Financing Order provided that all "collateral proceeds" (cash proceeds from the retail sale of goods) "upon such deposit [into the blocked accounts] shall become the sole and exclusive property of Congress." *In re HSSI,* 176 B.R. at 811 n. 5. The Bankruptcy Court did not explain how it arrived at its conclusion that the initial deposit into the blocked accounts was the deposit referred to in the Financing Order. It is clear from both the record and the opinion that a transfer of funds took place. However, it is *not* clear whether that transfer occurred at the time the proceeds were placed into one of the "blocked accounts," or into the concentration account, or when the money was transferred from the concentration account into Congress' account.

It appears that the Bankruptcy Court believed that the Subsidiaries were making payments to Congress on HSSI's behalf. This is so because the Subsidiaries were only *guarantors* on the Loan Agreement, they were not primary obligors. Without more, it would therefore seem that the Subsidiaries were making payments to Congress on behalf of HSSI and thus ought to pay the quarterly Trustee fee on these disbursements. However, the Bankruptcy Court concluded that these transactions were not "real economic activity," and therefore they were not "disbursements" by the Subsidiaries. This court cannot determine whether the transactions were "real economic activity" based on the record before it. To say that there is no "real economic activity" suggests that the transfers to Congress had no economic significance. This gives rise to several possibilities: (1) Congress already "owned" the accounts i.e. the Subsidiaries had no interest in them and Congress had *all* rights and interests in the money prior to the transfer because, for example, the language in the DIP Financing Order said that Congress "owned" the proceeds; or (2) the Subsidiaries had not interest in the accounts because, under the Consignment arrangement, HSSI

"owned" all interest in the proceeds.[2] The Bankruptcy Court's decision rests on three crucial determinations: (1) the transfers from the Subsidiaries to Congress represented "no real economic activity;" (2) the collateral proceeds became the "sole and exclusive property of Congress" under the Financing Order; and (3) the transfers were "intra-corporate." The Bankruptcy Court characterized the transfers from the blocked accounts to the concentration accounts as mere bookkeeping entries because they did not represent payments for goods, services, or debt. Without some greater explanation of the underlying economic arrangement between HSSI and the Subsidiaries, it is not clear that this is so.

Moreover, the recital that the "collateral proceeds shall become the sole and exclusive property of Congress" invites more questions than it answers. Without some explanation of what, if any, rights the Subsidiaries had in these "collateral proceeds" (both before and after the Financing Order) it is impossible to determine whether the transfer into the concentration account was "economic activity." Other than the fact that there was a consignment arrangement between HSSI and the Subsidiaries and the language of the Financing Order, there are no facts found and no law stated which support the conclusion that the subsidiaries had no interest in the collateral proceeds.[3] This court cannot tell whether the Bankruptcy Court rested its finding of a lack of "real economic activity" upon an implicit finding that the Subsidiaries were acting as HSSI's agents in the retail sale of inventory, or whether the Subsidiaries were separate entities. In sum, this court cannot tell why the Bankruptcy Court concluded that the transfers at issue were "intra-corporate" because there was no finding of fact to lead to the conclusion that the Bankruptcy Court should, or did, disregard the separate corporate forms of HSSI and the Subsidiaries.

Moreover, the Bankruptcy Court's conclusion that the intent of section 1930 was to impose a fee measured by the level of "real economic activity" finds no support in the text of the statute nor in any legislative history. As the Appellant points out, there are many examples of debtors in possession who disburse large sums of money to a limited number of parties.

HSSI paid some quarterly Trustee fees. It may be that the Subsidiaries, but not HSSI, should have paid. Thus, if the Subsidiaries made disbursements to Congress on behalf of HSSI, perhaps the subsidiaries should be subject to any fees on these payments and HSSI should not. Upon remand the Bankruptcy Court should also consider whether the dismissal of the underlying bankruptcy or other subsequent events warrant dismissal of this proceeding.

## CONCLUSION

WHEREFORE, for the reasons stated herein, the judgment of the Bankruptcy Court is REVERSED and REMANDED for further proceedings consistent with this memorandum opinion.

---

2. There is authority contrary to the position that the Subsidiaries had no interest in the goods that were consigned to them. See Ingrid Michelsen Hillinger, The Treatment of Consignments in Bankruptcy: Two Codes and Their Fictions, At Play, in the Fields, 6 Bankr.Dev. J. 73 (1989). Thus, it is unclear whether the arrangement contemplated in the operating Agreement is a "true" consignment, a "security" consignment, or not really a consignment at all.

3. The problem in this appeal is complicated by the fact that the Debtors attempted to use a "consignment" transaction as the vehicle for HSSI's transfer of the goods to its subsidiaries. Consignments have stymied the bankruptcy courts for many years because of the complicated ownership issues that arise. See Hillinger, The Treatment of Consignments in Bankruptcy: Two Codes and Their Fictions, At Play, in the Fields, 6 Bankr.Dev.J. 73 (1989).