[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 12, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-11805
_____

D. C. Docket No. 00-00238-CV-4-WS
Bkcy. No. 99-79997-TLH4

In Re:  CASH COW SERVICES OF FLORIDA LLC,

Debtor.,

_____

CASH COW SERVICES OF FLORIDA LLC,

Plaintiff-Appellee,

versus

UNITED STATES TRUSTEE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(July 12, 2002)**

Before TJOFLAT, RONEY and COX, Circuit Judges.

PER CURIAM:

In this bankruptcy case, the United States Trustee ("the Trustee") filed a motion to compel additional payment on the quarterly fees for the third and fourth quarters of 1999 by Cash Cow Services of Florida, LLC ("Cash Cow"), a Chapter 11 debtor. The Bankruptcy Court for the Northern District of Florida held that Cash Cow's consumer loans were "disbursements" for the purposes of 28 U.S.C. § 1930(a)(6) and thus subject to the Trustee's fees. *In re Cash Cow Servs. of Fla.,* 249 B.R. 33 (Bankr. N.D. Fla. 2000). The district court reversed. The Trustee appeals. We reverse and hold that the consumer loans made by Cash Cow were disbursements within the meaning of the statute and thus subject to the Trustee's fees.

Briefly, Cash Cow is a Florida company which operated a chain of stores that provided two types of consumer loans. The first type were "title loans," which are defined as a "loan of money secured by bailment of a certificate of title to a motor vehicle." FLA. STAT. § 538.03(1)(i) (1999). Such loans are not subject to Florida's usury law and its eighteen percent per year interest ceiling. FLA. STAT. § 687.03 (1999). Cash Cow could charge up to twenty-two percent per month. FLA. STAT. § 538.06(5)(e) (1999).

The second type of consumer loans were "check cashing" loans. In these transactions, the customer would give Cash Cow a check, receive a lesser amount of cash, and Cash Cow would agree to hold the check for two weeks ("delayed

presentment") when either (a) the customer paid Cash Cow the full amount of the check or (b) Cash Cow cashed the check.

This is a preconfirmation case, no Chapter 11 plan having been confirmed at the time of the decision. 28 U.S.C. § 1930 (1996) provides that parties commencing a case under Chapter 11 are subject to graduated fees for each quarter, based upon the "disbursements" for each quarter, until the case is converted or dismissed. Cash Cow's operating reports for the third and fourth quarters of 1999 calculated fees of $4,250 (based on disbursements of $152,458) and $8,000 (based on disbursements of $732,502) respectively, but did not include the amounts attributed to the title or check cashing loans. Calculations which included the loans made to customers showed an additional $8,500 (based on recalculated disbursements of $1,820,908) for the third quarter and an additional $48,750 (based on recalculated disbursements of $10,391,325), for a total amount in dispute of $57,250. Of course, the principle of law to be established by this case has ramifications beyond the amounts involved here.

The question is whether the consumer loans made by Cash Cow to its customers were "disbursements" under 28 U.S.C. § 1930(a)(6).

The bankruptcy court, after thoroughly analyzing the current caselaw, held that these consumer loans were "disbursements" subject to the Trustee's fees for the following reasons: (1) funds flow from the preconfirmation estate to a customer-

3

bailor, in exchange for an income earning opportunity flowing to the Debtor as bailee; (2) Cash Cow cited no legal precedent that would serve to limit the application of the fee calculation to capital flowing from the preconfirmation bankruptcy estate; and (3) Congress meant "disbursements" to include any and all funds paid out by the debtor (citing *In re Pettibone Corp.,* 244 B.R. 906, 919 (Bankr. N.D. Ill. 2000) (internal citations omitted)).

The district court reversed, holding that (1) a "loan" is not a "disbursement" as ordinarily defined; and (2) Congress did not intend the Trustee's fees to be based, in part, on the gross volume of Cash Cow's business just because Cash Cow was in the business of lending money.

We reverse the district court. Given the way that the word "disbursement" has been used in the caselaw, and that the caselaw in a variety of jurisdictions interprets "disbursement" broadly in various contexts, we follow our precedent in *In re Jamko,* 240 F.3d 1312 (11th Cir. 2001) and hold that the plain meaning of "disbursement" and the plain meaning of 18 U.S.C. § 1930(a)(6) as applied in this case require Cash Cow to pay the Trustee its required quarterly fees on the consumer loans made by Cash Cow to its customers, as well as Cash Cow's other disbursements, payments, or capital which flowed from the bankruptcy estate.

This Court has examined nine dictionaries and their definitions of "disburse" and "disbursement." OXFORD ENGLISH DICTIONARY (2d ed. 1991); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1993); NEW SHORTER OXFORD ENGLISH DICTIONARY ON HISTORICAL PRINCIPLES (1993); RANDOM HOUSE UNABRIDGED DICTIONARY (2d ed. 1993); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE, UNABRIDGED (1993); WEBSTER'S NEW WORLD COLLEGE DICTIONARY (3d. ed. 1997); RANDOM HOUSE WEBSTER'S COLLEGE DICTIONARY (1997); OXFORD AMERICAN DICTIONARY AND LANGUAGE GUIDE (1999); BLACK'S LAW DICTIONARY (7th ed. 1999).

The general consensus is that a "disbursement" is defined as either (a) the action or fact of disbursing, or (b) that which has been disbursed, money or funds paid out, or expenditure. To "disburse" means (a) to pay out or expend money; (b) to pay or defray costs, expenses, or charges; (c) to distribute; or (d) to pay for or on account of some thing.

These definitions do not restrict the meaning to a payment or an expenditure. Contrary to the argument that a "loan does not fall within the common and ordinary meaning of the term 'disbursement,'" Webster's Third New International Dictionary of the English Language, Unabridged uses this as an example of the use of the word: "disbursement of the loan has been completed."

Contrary to the argument that Congress could not have intended the word to include loans, the Trustee cited the following statutes in which "loan" and "disbursement" clearly go together: 2 U.S.C. § 661a(5)(B)(1) (referring specifically to "loan disbursements"); 12 U.S.C. § 1715z-1(s)(5)(A) (using the phrase "in a single loan disbursement "); 20 U.S.C. § 1072b(d)(1) (stating that "[f]unds in the Operating Fund shall be used for application processing, loan disbursement . . ."); 42 U.S.C. § 300e-7(b)(1)(B)(2) (stating that "[o]n the date disbursements are made under a loan after the initial disbursement under the loan, the Secretary may change the rate of interest on the amount of the loan disbursed . . ."); 45 U.S.C. § 821(1)(B)(1) (referring specifically to "loan disbursements").

The Trustee also cites the following cases where courts have referred to "loan disbursements" or disbursement of loans: *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 782 (2d Cir. 1999) (using the specific term "loan disbursements"); *United States v. Symington*, 195 F.3d 1080, 1089 (9th Cir. 1999) (stating that "[c]ounts 13 to 15 alleged that Symington . . . [submitted] materially false requests for disbursements on loans"); *United States v. Parsons*, 141 F.3d 386, 388 (1st Cir. 1998) (stating that "the bank agreed to make a full-scale loan . . . . [s]ome of this money was disbursed at once"); *United States v. Koster*, 163 F.3d 1008 (7th Cir. 1998) (referring, *passim*, to "Farm Stored Loan disbursements"); *United States v.*

6

*Sullivan*, 112 F.3d 180, 181 (5th Cir. 1997) (stating that "[t]his case centers on the circumstances surrounding the disbursement of four loans by defendants . . ."); *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank & Trust Co. of Chi.*, 93 F.3d 1064, 1068 (stating that "Chase expressly waived the provisions that tied the loan disbursements to the incurring of costs."); *Matter of McFarland*, 84 F.3d 943, 944 (7th Cir. 1996) (stating that "[t]he loan secured by the May 1993 note comprised a disbursement of $3500 . . ."); *United States v. Grissom*, 44 F.3d 1507, 1509 (10th Cir. 1995) (stating that "[t]he statements the government contended were false were loan disbursement requests Defendant submitted . . .)"

The Trustee argues that any flow of money from the bankruptcy estate is a "disbursement," triggering a quarterly fee based on the dollar amount of the disbursement, while Cash Cow argues that the monies given to its customers are not "disbursements" because they are not payments for an expense, but rather a retail exchange of its product (cash) for a customer's payment (title or check).

This is a case of first impression because it involves what appears, *prima facie,* to be loans and disbursements. There is somewhat limited caselaw on the word "disbursement" with respect to 28 U.S.C. § 1930(a)(6). *See, e.g., In re Jamko, Inc.*, 240 F.3d 1312 (11th Cir. 2001) (holding that the Trustee fee includes all disbursements, including those made in the ordinary course of business and not

limited to payments made to creditors or those made pursuant to a debtor's confirmed plan); *In re N. Hess' Sons, Inc.*, 218 B.R. 354 (D. Md. 1998) (holding that "disbursements" include all post-confirmation expenditures by debtor until the case is dismissed, converted, or closed, including monies disbursed in the ordinary course of the Debtor's business); *In re Postconfirmation Fees*, 224 B.R. 793 (Bankr. E.D. Wash. 1998) (holding that disbursement means all funds paid out, citing *St. Angelo v. Victoria Farms,* 38 F.3d 1525 (9th Cir. 1994), and that funds paid out include all operating expenses and post-confirmation expenditures of the reorganized debtor); *In re Pars Leasing*, 217 B.R. 218 (Bankr. W.D. Tex. 1997) (holding that, where sole source of revenue for debtor-in-possession came from payments received under vehicle leases for truck tractors owned by debtor, "disbursements" includes not only actual cash disbursements made by debtor, but also those cash disbursements for expenses made by common carriers pursuant to lease agreements with debtor); *In re Flatbush Assoc.*, 198 B.R. 75 (Bankr. S.D.N.Y. 1996) (holding that payment of rents directly from debtor's subtenants to co-op constitute "disbursements" for the purposes of 28 U.S.C. § 1930 because the rents were property of the debtor's estate and were being used to offset an expense of the estate); *In re HSSI, Inc.,* 193 B.R. 851 (N.D. Ill. 1996) (construing disbursement to mean a transfer of money by the debtor in possession where the debtor has some interest in that money); *In re Meyer,* 187 B.R.

650 (Bankr. W.D. Mo. 1995) (holding that money paid out by an escrow agent as the proceeds in which the debtor had an interest are disbursements subject to quarterly fees); *St. Angelo v. Victoria Farms,* 38 F.3d 1525 (9th Cir. 1994) (holding that "disbursements" include all payments from the bankruptcy estate, i.e. all funds paid out, and do not exclude payments to a secured creditor from the sale proceeds of the secured party); *In re Hays Builders, Inc.*, 144 B.R. 778 (Bankr. W.D. Tenn. 1992) (holding that a disbursement is any payment, and that all disbursements, whether direct or through a third party, are included of the calculation of fees due to the U.S. Trustee under § 1930); *In re Wernerstruck, Inc.*, 130 B.R. 86 (D. S.D. 1991) (holding that debtor's payment to bank are disbursements within the meaning of 28 U.S.C. § 1930 whether or not they are the required annual payment or prepayment on the loan, and citing *In re Ozark Beverage Co., Inc.,* saying that a disbursement is any payment); *In re Ozark Beverage Co., Inc.*, 105 B.R. 510 (Bankr. E.D. Mo. 1989) (refusing to limit "disbursements" to post-petition payments made to pre-petition debtors; disbursements encompass all expenses paid by debtor in possession).

None of the above cases prevents or limits applying the Trustee's fee calculation to only "payments" or capital flowing from the bankruptcy estate.

Accordingly, we hold that the consumer loans made by Cash Cow were "disbursements" within the meaning of 28 U.S.C. § 1930(a)(6) and therefore subject to the Trustee's fees, and reverse the district court.

REVERSED.