**In re FABRICATORS SUPPLY COMPANY, Debtor.**

**No. 02–37185 NLW.**

United States Bankruptcy Court, D. New Jersey.

April 29, 2003.

Melinda D. Middlebrooks, Esq., Paul S. Pflumm, Esq., Middlebrooks and Shapiro, PC, Roseland, NJ, for Debtor.

Roberta A. DeAngelis, Newark, NJ, Acting United States Trustee.

### OPINION

NOVALYN L. WINFIELD,
Bankruptcy Judge.

This matter came before the Court on the motion by Fabricators Supply Company ("Fabricators") to determine the amount of the quarterly fees payable to the United States Trustee. Fabricators seeks a determination that the payments it makes to its lender on account of its revolving line of credit are not disbursements under 28 U.S.C. § 1930(a)(6) on which quarterly fees must be calculated. The United States Trustee opposes the motion. As set forth at greater length below, the Court finds that the position of the United States Trustee is persuasive.

The Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 1334 and 157(a), and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), and the following constitutes the findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052.

### STATEMENT OF FACTS

On July 1, 2002, Fabricators filed its petition for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, and has continued in possession of its property and management of its business as a debtor-in-possession. Fabricators engages in business as a distributor of various building materials.

Shortly after commencing its Chapter 11 case, Fabricators entered into a post-petition loan facility consisting of a $2.5 million revolving line of credit with Summit Business Capital Corp., d/b/a Fleet Capital ("Fleet"). As aptly described at ¶ 2.1 of the Post-petition Loan and Security Agreement ("Loan Agreement") and subject to the agreed upon limitations, Fabricators "may borrow, repay and reborrow under the Line."

At the time that the Court authorized the interim post-petition financing, Fabricators owed Fleet approximately $1.8 million. Both the interim and final financing orders and the Loan Agreement authorize and direct Fabricators to remit to Fleet all cash collateral, and further authorize Fleet to apply the funds collected to the outstanding balance owed. Based on the lending formula described in the Loan Agreement, Fabricators is then permitted to borrow against the credit line.

Pursuant to the Loan Agreement, Fabricators deposits all accounts receivable collections and other proceeds from collateral into a cash collateral account maintained by Fleet. Fabricators describes this account as a "blocked" bank account because Fleet has sole control over this account,

and Fabricators cannot withdraw any money from the account. Stephen Ciecura ("Ciecura") the Executive Vice–President of Fabricators states that Fleet sweeps the monies from the blocked account on a daily basis. Indeed, this description is consistent with ¶ 5.4(c) of the Loan Agreement which provides that "all items deposited into the Cash Collateral Account will be credited by Lender as payments of Lender Indebtedness on the Business Day on which such items are deposited into the Cash Collateral Account." As further described by Ciecura, Fabricators maintains a Fleet business checking account ("operating account") which is funded based in the available credit on the revolving loan and monies transferred from the blocked account. Fabricators pay its vendors and other business expenses from its operating account.

Fabricators characterizes its Loan Agreement with Fleet as creating a continuous flow of dollars against its credit line such that no disbursement occurs when Fleet sweeps the blocked account. Rather, Fabricators contends that disbursements only occur when it makes payments from its operating account. It appears that Fabricators has calculated its quarterly fee payments for the third and fourth quarters of 2002 in a manner consistent with its theory of applicable disbursements. For the third quarter of 2002, Fabricators identified on its monthly operating reports "ordinary disbursements" of $3,413,222 and paid the applicable quarterly fee of $8,000.[1] For the fourth quarter of 2002, Fabricators identified ordinary disbursements of $3,587,624 and paid $2,000, thereby underpaying even the amount it claims is due.

The United States Trustee rejects Fabricolor's contention that a disbursement does not occur when Fleet sweeps the blocked account. The United States Trustee asserts that the account sweeps unquestionably are disbursements to Fleet, since the monthly operating reports reveal a paydown of the debt to Fleet of $500,000 by the end of December, 2002. Additionally, the United States Trustee points out that although Fabricators does not exercise any control over the blocked account, that account is simply the mechanism for payments to Fleet, to which Fabricolor agreed at the outset of its postpetition lending arrangement, and for which it sought and received court approval.

### DISCUSSION

The issue before the Court is the intended scope of the term "disbursements" in 28 U.S.C. § 1930(a)(6). The issue arises because the statute does not define the term. Fabricators argues for a narrow construction of the term, while the United States Trustee contends that the ordinary, everyday meaning of the term should control. The Court finds that the position of the United States Trustee is persuasive.

The Supreme Court observed in *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) that "[a] fundamental canon of statutory construction is that ... words will be interpreted as taking their ordinary, contemporary common meaning." Applying this maxim, two circuit courts have examined various widely used dictionaries and determined that the term disbursement simply means to "to expend" or "to pay out." *In re Cash Cow Services of Florida, LLC,* 296 F.3d 1261, 1263 (11th Cir.2002); *St. Angelo v. Victoria Farms, Inc.,* 38 F.3d 1525, 1534 (9th Cir.1994), *amended,* 46 F.3d 969 (9th Cir.

---

1. Pursuant to 28 U.S.C. § 1930(a)(6) quarterly fees of $8,000 are due for each quarter in which disbursements total $3,000,000 or more, but less than $5,000,000.

1995). In *St. Angelo,* relying in part on the foregoing definition, the court found that § 1930(a)(6) could not be read to distinguish between payments to secured and undersecured creditors. 38 F.3d at 1534. It reversed the District Court's conclusion that the term disbursement excludes all payments to a secured creditor from the sale proceeds of the secured property. *Id.* At 1535.

The *Cash Cow* case is particularly instructive because the Eleventh Circuit found that the commonly understood meaning of disbursement is broad enough to include the consumer loans the debtor made to its customers. The debtor in *Cash Cow* was engaged in the business of providing consumer loans. Because the debtor calculated and paid its quarterly fees without including the amounts attributable to the consumer loans it made to its customers, the United States Trustee moved to compel the payment of additional quarterly fees. The Bankruptcy Court found that the consumer loans qualified as disbursements. However, the District Court reversed on the grounds that the loans did not fall within the ordinary meaning of disbursement, and that Congress did not intend for quarterly fees to be based on the gross volume of the debtor's business simply because it was in the business of lending money. 296 F.3d at 1263. The Eleventh Circuit reversed the District Court because its examination of the definition of disbursement revealed that the term is generally defined "... as either (a) the action or fact of disbursing, or (b) that which has been disbursed, money or funds paid out, or expenditure." *Id.* Based on this understanding of the meaning of the term, the court had no difficulty finding that the consumer loans made by the debtor constituted disbursements. It pointed out that Webster's Dictionary uses the example of the disbursement of loan proceeds as an illustration of the meaning of the term. *Id.*

Based on the breadth of the everyday meaning of the term disbursement and the application of that definition in both *St. Angelo* and *Cash Cow* it is readily apparent that the process by which Fabricators deposits its accounts receivable into the blocked account and Fleet then sweeps that account results in disbursements to Fleet on which the quarterly fees should be calculated. Fabricators' contention that it cannot be charged with a disbursement from the blocked account because it exercises no control over the account is totally without merit. The blocked account and the sweep of that account is simply the payment mechanism to which Fabricators agreed when it entered into the Loan Agreement with Fleet. The accounts receivable deposited by Fabricators into the blocked account certainly constitute debtor funds, and the sweep of the account by Fleet certainly constitutes an "action or fact of disbursing" as described in *Cash Cow.*

Also unavailing is Fabricators' argument that there is no economic substance to the sweeps by Fleet because the amount of the debt owed by Fabricators is essentially the same before and after the sweeps occur as a result of the revolving nature of the loan. What Fabricators misunderstands is that the revolving nature of the Line of Credit is precisely what results in the disbursement when the blocked account is swept. During the term of the Line of Credit, Fabricators actually engages in a series of borrowing transactions which are repaid by the sweeps of the blocked account. As the Loan Agreement states, Fabricators "may borrow, repay and re-borrow under the Line."

Nor does the case law support a narrow application of the term. In addition to *Cash Cow* and *St. Angelo,* a number of other courts have also determined that the word disbursement should not be construed in a restrictive manner. *See, e.g.,*

*In re HSSI, Inc.*, 193 B.R. 851, 854 (N.D.Ill.1996) (disbursement means a transfer of money by the debtor in possession where the debtor has some interest in that money); *In re Hays Builders, Inc.*, 144 B.R. 778, 780 (W.D.Tenn.1992) (all disbursements, whether made by the debtor or third party are to be included for calculation of quarterly fees); *In re Werner-struck, Inc.*, 130 B.R. 86, 89 (D.S.D.1991) (payments to bank are disbursements with the meaning of § 1930(a)(6) whether they are a required annual payment or prepayment on a loan); *In re Ozark Beverage Co., Inc.*, 105 B.R. 510, 512 (Bankr. E.D.Mo.1989) (disbursements encompass all expenses of a debtor in possession in a given quarter).

■ Although resort to legislative history is not necessary given the plain meaning of the statutory language, a short review of the statute also makes it plain that the term disbursement should not be applied in a restrictive fashion. The United States Trustee Program ("the Program") is responsible for monitoring bankruptcy cases, including the supervision of cases filed under the Chapter 11 of title 11, United States Code. *See*, 28 U.S.C. § 586(a). To fund the Program, Congress established the United States Trustee System Fund ("Fund"). By creating the Fund, Congress intended that the Program would be self-funded and that the cost of the Program would be born by "the users of the bankruptcy system, not the taxpayer." *See*, Pub.L. No. 99–764, 99th Cong., 2d Sess. 22, 26 (1986), 1986 U.S.C.C.A.N. 5227, 5234, 5238. To help establish and replenish the Fund, Congress enacted 28 U.S.C. § 1930(a)(6).

As originally enacted, the statute provided that Chapter 11 debtors were obligated to pay quarterly fees until a plan was confirmed. Since its enactment, Congress has amended § 1930(a)(6) six times to either increase the quarterly fees or to include other bankruptcy fees as part of the funding of the Program. *See, e.g.,* Judiciary Appropriations Act, Pub.L. 101–162, 103 Stat. 1016 (1989) (increasing certain fees, and imposing a filing fee for motions for relief of the automatic stay and motions to compel abandonment of property); Dep't of Commerce, Justice and State, Judiciary and Related Agencies Act, Pub.L. 102–140, 105 Stat. 195 (1991) (increasing the filing fee for Chapter 11 cases, and increasing the U.S. Trustee's quarterly fees); Appropriations Act for the Dep't of Commerce, Justice and State, Judiciary and Related Agencies, Pub.L. 103–121, 107 Stat. 1164 (1993) (raising certain bankruptcy filing fees).

The most recent amendment occurred in January, 1996, when Congress again amended the statute to increase the amount of quarterly fees and to make quarterly fees payable "until the case is converted or dismissed." *See* Balanced Budget Downpayment Act, Pub.L. 104–9, 110 Stat. 26, 37–38 (1996). The result of eliminating confirmation as a terminating event for the obligation to pay quarterly fees is that quarterly fees became payable post-confirmation as well as pre-confirmation. The stated purpose of this amendment was (i) to counter a decline in quarterly fee income, and (ii) to provide funding for post confirmation oversight of Chapter 11 cases. *In re Jamko, Inc.*, 240 F.3d 1312, 1315 (11th Cir.2001). Subsequently, in September 1996, § 1930 was further amended to clarify that the January 1996 amendment was intended to apply to pending confirmed cases which had not been converted or dismissed.[2] *See* Omnibus Consol. Appropriations Act, Pub.L. 104–208, 110 Stat. 3009 (1996).

From the foregoing, it is evident that since 1986 Congress has expanded, not

**2.** There is general agreement that the legisla-       tive scheme in the September 1996 amend-

restricted, the applicability of the quarterly fee assessment in Chapter 11 cases. Moreover, if Congress disagreed with the construction of the term "disbursements" as applied by courts since as early as 1989, Congress could have included language in one of the several amendments to clarify the scope of the term. Congress has chosen not to do so. The Court believes it reasonable to infer that the plain meaning of the term is the one intended by Congress.

### CONCLUSION

The word "disbursement" in 28 U.S.C. § 1930(a)(6) must be given its plain everyday meaning. Thus, a sweep of the blocked account by Fleet constitutes a disbursement of Fabricator's funds for purposes of calculating the quarterly fees that are due.

See also 275 B.R. 737.

ment to § 1930(a)(6) requiring payment of fees until the case is "converted or dismissed" should be read to include "or closed." *See United States Trustee v. Gryphon at Stone Mansion, Inc.*, 166 F.3d 552, 554, n. 1 (3d Cir.1999) (citing with approval *United States Trustee v. CF & I Fabricators of Utah, Inc.*, 150 F.3d 1233 (10th Cir.1998)); *see also Vergos v. Gregg's Enterprises, Inc.*, 159 F.3d 989, 990–93 (6th Cir.1998) (holding that termination of fees upon closure was consistent with Congressional intent).