ELECTRONIC CITATION: 2007 FED App. 0010P (6th Cir.)
File Name: 07b0010p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re

     R.W. LEET ELECTRIC, INC.,

          Debtor.

_____

MARCIA R. MEOLI, Chapter 7 Trustee,

     Plaintiff - Appellant,

v.                         No. 06-8071

KENDALL ELECTRIC, INC.,

     Defendant - Appellee.

_____

Appeal from the United States Bankruptcy Court
for the Western District of Michigan,
Southern Division, at Grand Rapids
No. 04-88626

Argued: May 1, 2007

Decided and Filed: July 19, 2007[*]

Before: AUG, LATTA, and PARSONS, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Michael O'Neal, WARNER, NORCROSS & JUDD, Grand Rapids, Michigan, for Appellant. Vern J. Steffel, Jr., STEFFEL & STEFFEL, Battle Creek, Michigan, for Appellee. **ON BRIEF:** Michael O'Neal, Stephen B. Grow, WARNER, NORCROSS & JUDD, Grand Rapids,

_____

[*]This decision, in which the precedential effect was limited, was originally issued and filed on July 19, 2007. The court has now designated the opinion as one in which the precedential effect is fully precedential.

Michigan, for Appellant. Vern J. Steffel, Jr., STEFFEL & STEFFEL, Battle Creek, Michigan, for Appellee.

_____

**OPINION**

_____

MARCIA PHILLIPS PARSONS, Bankruptcy Appellate Panel Judge. In this preference action under 11 U.S.C. § 547, the bankruptcy court granted summary judgment in favor of the defendant, concluding that the alleged preferential payments had not been property of the debtor because they were trust funds under Michigan law. For the reasons that follow, the decision will be reversed and the proceeding remanded.

## I. ISSUES ON APPEAL

The issues on appeal are:

(1) whether the defendant in a preference action who claims that it was paid with trust funds under the Michigan Building Contract Fund Act ("MBCFA") has the burden of tracing the trust funds through the debtor's commingled bank account;

(2) whether the bankruptcy court erred in concluding as a matter of law that monies loaned to the debtor were trust funds under the MBCFA; and

(3) whether the bankruptcy court erred in ruling that no issues of fact existed regarding whether the payments by the debtor to the defendant constituted the property of the debtor under § 547(b) of the Bankruptcy Code.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel ("BAP") has jurisdiction to decide this appeal. The United States District Court for the Western District of Michigan has authorized appeals to the BAP, and a final order of the bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). An order, for the purpose of an appeal, is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989). The bankruptcy court's order granting summary judgment

2

was a final order. "An order granting summary judgment is a final order for purposes of appeal." *Wicheff v. Baumgart (In re Wicheff)*, 215 B.R. 839, 840 (B.A.P. 6th Cir. 1998); *see also Belfance v. Bushey (In re Bushey)*, 210 B.R. 95, 98 (B.A.P. 6th Cir. 1997).

"A grant of summary judgment is reviewed de novo." *SPC Plastics Corp. v. Griffith (In re Structurlite Plastics Corp.)*, 224 B.R. 27, 29 (B.A.P. 6th Cir. 1998) (citing *Myers v. IRS (In re Myers)*, 216 B.R. 402, 403 (B.A.P. 6th Cir. 1998)). "De novo means that the appellate court determines the law independently of the trial court's determination." *In re Ravenswood Apartments, Ltd.*, 338 B.R. 307, 310 (B.A.P. 6th Cir. 2006) (quoting *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001)); *see also In re Mktg. & Creative Solutions, Inc.*, 338 B.R. 300, 302 (B.A.P. 6th Cir. 2006) ("De novo review means that the issue is decided as if it had not been heard before.") (citing *In re Downs*, 103 F.3d 472 (6th Cir. 1996)); *Fields v. Sallie Mae Servicing Corp. (In re Fields)*, 326 B.R. 676, 678 (B.A.P. 6th Cir. 2005) ("De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination.") (quoting *In re Eubanks*, 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998)). "No deference is given to the trial court's conclusions of law." *In re Eastown Auto Co.*, 215 B.R. 960, 964 (B.A.P. 6th Cir. 1998). *See also In re Eagle-Picher Indus., Inc.*, 447 F.3d 461 (6th Cir. 2006) (conclusions of law are reviewed de novo).

## III. FACTS

On September 6, 2002, an order for relief under chapter 7 of the Bankruptcy Code was entered against R.W. Leet Electric, Inc., an electrical construction contractor (the "Debtor"). On August 16, 2004, the chapter 7 trustee, Marcia R. Meoli ("Trustee"), commenced the present adversary proceeding against Kendall Electric, Inc. ("Kendall"), an electrical materials supplier, to recover as preferential fourteen payments totaling $321,878.49 made by the Debtor to Kendall during the ninety-day preference period. In its answer to the complaint, Kendall generally denied all of the statutory elements of a preference. Additionally, Kendall specifically asserted that the payments it had received from the Debtor had not been property of the Debtor because the monies were trust

3

funds under the MBCFA, Mich. Comp. Laws Ann. §§ 570.151-.153.[1] Thereafter, on February 24, 2006, Kendall moved for summary judgment on that basis, supported by the affidavit of Judith M. Gates, the credit manager of Kendall.

Ms. Gates stated in the affidavit that upon purchasing electrical materials on credit from Kendall, the Debtor would identify the party/construction contract for whom the materials were to be used, with Kendall then setting up credit lines for the Debtor in the name of the particular party ("Job Account"). When the Debtor subsequently paid Kendall for the materials, it would designate the Job Account to which the particular payment should be applied. According to Ms. Gates, all payments Kendall received from the Debtor, including those received during the preference period, were applied in accordance with the Debtor's instructions. Ms. Gates also stated that at the time each Job Account was established, the Debtor assured Kendall that it would forward payment to Kendall as soon as it received payment from the contracting party and that the president of the Debtor had informed her that all payments by the Debtor to Kendall during the preference period had been remitted as the Debtor received payment from the contracting party. Ms. Gates attached to her affidavit a copy of the Debtor's accounts payable ledger that set forth the various payments by the Debtor to Kendall and the particular Job Account for which payment was made.

Kendall's motion for summary judgment was met with opposition from the Trustee, who asserted that genuine issues of material fact existed which precluded summary judgment. The Trustee conceded in her responsive brief for purposes of the motion that any monies *received* by the Debtor from its contracting parties were trust funds under the MBCFA. She denied, however, that the Debtor *paid* Kendall with these monies. It is undisputed that the Debtor did not maintain separate bank accounts for each of its projects; instead, it deposited all customer payments, along

---

[1] The Act states, in relevant part, as follows:

Sec. 1. In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

Mich. Com. Laws Ann. § 570.151.

with monies from other sources, into one general commercial account. Moreover, the Debtor often used one check to pay invoices on multiple jobs. Relying on the Debtor's bank records at Bank One and the deposition transcript of a bank employee, the Trustee asserted that the Debtor's payments to Kendall could not be traced back to trust funds received by the Debtor.

During the preference period, the Debtor made the following payments to Kendall:

| Check | Check Amount | Check Clearing Date |
|---|---|---|
| 19041 | $50,462.31 | 06/10/2002 |
| 19044 | $20,877.12 | 06/10/2002 |
| 19045 | $22.50 | 06/10/2002 |
| 19068 | $168,873.71 | 06/13/2002 |
| 19076 | $30,543.16 | 06/13/2002 |
| 19265 | $10,299.99 | 07/08/2002 |
| 19266 | $52.06 | 07/08/2002 |
| 19302 | $6,245.77 | 07/11/2002 |
| 19303 | $144.96 | 07/17/2002 |
| 19317 | $20,000.00 | 07/12/2002 |
| 19364 | $1,676.77 | 07/18/2002 |
| 19381 | $7,464.52 | 07/30/2002 |
| 19382 | $7.90 | 07/30/2002 |
| 19399 | $5,207.72 | 07/30/2002 |
| **Total** | **$321,878.49** | |

The Debtor's accounts payable ledger indicated that the first two payments to Kendall listed above were for a Quincy Schools project and that the third payment was for a Pharmacia job. The Trustee argued that the evidence submitted by Kendall in support of its summary judgment motion failed to establish that the owners of these projects had even paid the Debtor and, therefore, summary

5

judgment should be denied as to these transfers because Kendall had failed to trace the monies received by it to trust funds previously received by the Debtor.

With respect to check no. 19068 which was payment to Kendall on a Wal-Mart job, the Debtor's bank records submitted by the Trustee indicated that the Debtor's total bank deposit on June 10, 2002, was $524,084.04, which included two checks from Wal-Mart totaling $392,749.51. On June 11, the Debtor added to its bank account $200,000 that it had borrowed on its bank line of credit. Also on that day, the Debtor's funds on deposit were reduced by several checks which cleared the bank, including an $893,603.17 payment made by the Debtor on its commercial loan with Bank One. As a result of all of these transactions, the closing balance in the Debtor's bank account on June 11 was $36,255.85. After the addition of deposits from other sources, Debtor's check no. 19068 to Kendall in the amount of $168,873.71 cleared the Debtor's bank account on June 13.

Citing the Sixth Circuit Court of Appeals' decision in *First Federal of Michigan v. Barrow*, 878 F.2d 912 (6th Cir. 1989), the Trustee asserted, "Where trust funds are commingled with other funds in a single account and the balance of that account drops below the amount of the original trust, only the lowest balance of the funds retain the 'trust fund' characteristics." (Trustee's App. 0069.) Applying this "lowest intermediate test," the Trustee argued that only $36,255.85 of the $168,873.71 check paid to Kendall could constitute trust funds and, therefore, the balance of the transfer could be avoided as a preference.

Check no. 19076 in the amount of $30,543.16 to Kendall cleared on June 13, 2002, the same day that check no. 19068 for the Wal-Mart job cleared. The Debtor's account payable ledger indicates that check no. 19076 was payment for invoices on at least twenty different jobs. The Trustee argued that Kendall had failed to trace payment of this check to trust funds received by the Debtor and that, additionally, application of the lowest intermediate balance test would not aid Kendall since the bank balance of $36,255.85 on that same day was being used to protect part of the Wal-Mart check from avoidance.

Lastly, with respect to the nine checks paid to Kendall in July, the Trustee asserted that the Debtor's bank records establish that none of these payments had been made from trust funds, but had

6

instead been paid with funds the Debtor had borrowed from Bank One. More specifically, the deposition testimony of the Bank One employee, Steve Peltz, revealed that immediately prior to the payment of these nine checks by the Debtor to Kendall, Bank One and the Debtor had changed the Debtor's banking arrangement due to the Debtor's deteriorating financial condition. Pursuant to a dominion of funds agreement, all payments and checks written to the Debtor were deposited by the Debtor into a general "pooled" account at Bank One, which the bank swept daily and applied against the line of credit owed by the Debtor to the bank. Subject to loan availability, the Debtor's operations were then funded by new borrowings under the Debtor's line of credit with the bank. The new funds advanced to the Debtor were placed in a separate controlled disbursement account as necessary to cover checks the Debtor wrote to fund operations, including the July 2002 payments to Kendall. As such, the Trustee asserts that Kendall was paid with monies the Debtor borrowed from Bank One rather than trust funds.

In a July 11, 2006 bench ruling, the bankruptcy court granted Kendall's summary judgment motion, concluding as a matter of law that Kendall had been paid with trust funds and, therefore, the Trustee would be unable to prove, as required by § 547(b) of the Bankruptcy Code, that the payments were property of the Debtor. According to the court, even if the Debtor had initially used the trust funds to pay down its bank obligation, funds the bank thereafter loaned the Debtor for payment to suppliers regained trust fund status. Although the court did not specifically reference the payments to Kendall that did not originate from loaned funds, the court did suggest that any duty to trace must be borne by the Trustee, citing the Trustee's burden of proof under § 547(g) of the Bankruptcy Code and the Debtor's obligation as a recipient of trust funds to account for the use of such funds, which the court concluded continued post-bankruptcy and became the responsibility of the bankruptcy trustee.

In accordance with this ruling, the bankruptcy court entered an order on July 13, 2006, granting summary judgment and dismissing the adversary proceeding. After receiving an extension of time to appeal, the Trustee timely filed a notice of appeal on August 11, 2006.

7

# IV. DISCUSSION

Pursuant to 11 U.S.C. § 547(b),

the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Although the Bankruptcy Code does not define "property of the debtor," the Supreme Court has found that the term is "best understood as that property that would have been part of the estate had it not been transferred [by the debtor] before the commencement of bankruptcy proceedings." *Begier v. IRS*, 496 U.S. 53, 58, 110 S. Ct. 2258, 2263 (1990). "In defining 'an interest of the debtor in property' the Sixth Circuit looks to 11 U.S.C. § 541(a)(1), which provides that the property of the estate includes 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *Spradlin v. Jarvis (In re Tri-City Turf Club, Inc.)*, 323 F.3d 439, 443 (6th Cir. 2003) (citing *Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 849 (6th Cir. 2002)). In addition, in the absence of controlling federal bankruptcy law, the substantive nature of the debtor's property interest is defined by state law. *Id*. (citing *In re Cannon*, 277 F.3d at 849; *Jenkins v. Chase Home Mortgage Corp. (In re Maple Mortgage, Inc.)*, 81 F.3d 592, 596 (5th Cir. 1996)).

8

Moreover, pursuant to 11 U.S.C. § 541(d), "property of the estate" includes all property to which the debtor holds legal title, except "to the extent of any equitable interest in such property that the debtor does not hold." "Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.' Nor is such an equitable interest 'property of the debtor' for purposes of § 547(b)." *Poss v. Morris (In re Morris)*, 260 F.3d 654, 670 (6th Cir. 2001) (quoting *Begier,* 496 U.S. at 59, 110 S. Ct. at 2258)).

There is no dispute that any monies paid to the Debtor by contracting parties would be held in trust by the Debtor and would not constitute its property. Section 570.151 of the MBCFA provides that "[i]n the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be construed by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen . . . ." *See Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 252 (6th Cir. 1982) ("The Michigan Building Contract Fund Act imposes a 'trust' upon the building contract fund paid by any person to a contractor or subcontractor . . . ."). The trust under this statute has been expressly recognized by the Sixth Circuit Court of Appeals in the preference context. *See Selby v. Ford Motor Co.*, 590 F.2d 642, 647 (6th Cir. 1979) ("We . . . believe that federal bankruptcy law should recognize and enforce the property rights created by state law under the Michigan statutory trust.").

However, it does not appear that the mere fact that the Debtor may have received trust funds is sufficient to insulate the payments to Kendall from avoidance. As argued by the Trustee, it must be established that the payments actually paid to Kendall are traceable to the trust funds received by the Debtor. *See Begier,* 496 U.S. at 62, 110 S. Ct. at 2258 (recognizing that it is insufficient under common law to establish that the debtor held funds in trust: it must also be established that the alleged preference recipient was paid with trust funds). In *Selby*, a case decided by the Sixth Circuit under the Bankruptcy Act, the court concluded that payments by a debtor contractor to its subcontractors and by an owner to subcontractors on the contractor's behalf did not constitute preferences because the contractor had no interest in the monies which were impressed with a trust under the MBCFA. *Selby*, 590 F.2d at 649. Unlike the instant case, there was no indication in *Selby*

that the debtor had placed the trust funds in a commingled account such that tracing was necessary. Nonetheless, the court's holding included an explicit recognition of the tracing requirement: "The beneficial interest of subcontractors and materialmen in a building fund should not be regarded as the property of the bankrupt debtor, *at least so long as the beneficial interests are traceable.*" *Id.* (Emphasis supplied.)

The necessity of tracing was subsequently reiterated by the Sixth Circuit in the *First Federal of Michigan v. Barrow* decision. In that case, the bankruptcy trustee sought to recover as preferential certain payments made by the debtor out of its commingled bank account. *First Federal*, 878 F.2d at 914. The payment recipients defended on the basis that the payments were not property of the debtor because they were funds held in trust by the debtor and argued that tracing was unnecessary. *Id.* at 915. The court unequivocally rejected this argument: "It is beyond peradventure that, as a general rule, any party seeking to impress a trust upon funds for purposes of exemption from a bankruptcy estate must identify the trust fund in its original or substituted form." *Id.* (citing *Danning v. Bozke (In re Bullion Reserve of N. Am.)*, 836 F.2d 1214 (9th Cir. 1988) (requiring tracing for express trust where funds had been commingled)). Although *First Federal* involved a constructive trust, the court's reasoning for its holding applies with equal force to a statutory trust such as that involved in the present case, since in both instances trust money, having "no extrinsic identifiable characteristics of its own," becomes unidentifiable when it is commingled with a debtor's non-trust monies in a general account. *Id.* at 915. *See Lovett v. Homrich Inc. (In re Philip Servs. Corp.)*, 359 B.R. 616 (Bankr. S.D. Tex. 2006) (recognizing that *First Federal* rule requiring tracing is equally applicable to express or statutory trusts); *see also In re Bullion Reserve of N. Am.*, 836 F.2d at 1218 (court of appeals noted that even if express trust had existed, preference recipient had "a duty under federal bankruptcy law" to trace trust funds to bullion received by him).

The tracing requirement was expressly recognized and applied by the bankruptcy court in the recent *Philip Services* decision, a case on all fours with the facts of the instant case. Based on its review of the law in this area, including the *Selby* and *First Federal* decisions, along with cases under Michigan law construing the MBCFA, the *Philip Services* court concluded that the courts considering the issue have, with one exception, "universally agree[d] that the trust beneficiary must

10

be able to trace the funds." *In re Philip Servs. Corp.*, 359 B.R. at 628 (citing *Blair v. Trafco Prods., Inc.*, 369 N.W.2d 900 (Mich. App. 1985) (holding that funds were held in trust under the MBCFA because the claimant had sufficiently traced them through commingled funds); *Distral Energy Corp. v. Mich. Boiler & Eng'g Co. (In re Mich. Boiler & Eng'g Co.)*, 171 B.R. 565 (Bankr. E.D. Mich. 1993) (concluding that a subcontractor, who asserts that debtor contractor is holding property in trust for its benefit under the MBCFA, must be able to trace the specific funds received by the debtor from the owner to any funds remaining in the debtor's commingled bank account)); *see also Daly v. Radulesco (In re Carrozzella & Richardson)*, 247 B.R. 595, 600-01 (B.A.P. 2d Cir. 2000) (holding that under Connecticut law, a trust beneficiary must trace his property to a particular trust res) (citing *In re Faber's, Inc.*, 360 F. Supp. 946, 949-50 (D. Conn. 1973) ("noting that even where a 'trustee has violated a statutory requirement by commingling funds, if the beneficiary cannot identify his money he will have to take his place at the end of the line behind those favored by the priorities set out in the Bankruptcy Act'")).

The *Philip Services* court noted the only case which had not recognized a tracing requirement under similar facts was *Imperial Tile*, wherein the bankruptcy court held, based on its interpretation of *Selby*, that "trust funds need only be traceable when they are in the custody of the estate as of filing, . . . but that strict tracing is not necessary when the transfers have been completed prepetition." *Imperial Tile and Carpet, Inc. v. Trustees of the Tile, Terrazzo, Marble and Pre-Cast Panel Workers Ind. Ins. Fund (In re Imperial Tile and Carpet, Inc.)*, 94 B.R. 97, 99 (Bankr. W. Mich. 1988). The *Philip Services* court rightfully rejected *Imperial Tile's* reading of *Selby*: "[I]f 'an interest of the debtor in property' means property that would become 'property of the estate' [had the transfer not occurred], *Begier, supra*, then it is irrelevant whether the transfer was pre or postpetition." *In re Philip Servs. Corp.*, 359 B.R. at 628. And, as recognized by the court in *Greenwald v. Center Line Electric, Inc. (In re Trans-End Technology, Inc.)*, No. 97-6119, 1998 WL 542331 (Bankr. N.D. Ohio July 8, 1998), the *Imperial Tile* decision was rendered prior to the Sixth Circuit's decision in *First Federal*, wherein the court of appeals made it clear that "'tracing' within the context of 'commingled

11

funds' was not an issue that was joined, addressed, considered, or discussed in [*Selby*]." *First Federal*, 878 F.2d at 915.[2]

Based on the foregoing cases, we are confident that the law in this area is that tracing is necessary in order to establish that Kendall was actually paid with trust funds. And, even if we had the discretion to rule otherwise—which we do not—we see no reason to do so. "Without a tracing requirement, insolvent trustees who have converted trust assets for their own use would be able to choose, on the eve of bankruptcy, who is to be repaid and who is not. Thus, similarly situated creditors would receive disparate treatment." *In re Carrozzella & Richardson*, 247 B.R. at 601.[3]

The cited cases also establish that the burden of tracing must be borne by Kendall rather than the Trustee. The bankruptcy court's contrary ruling in this case was based on the general burden of

---

[2] *Imperial Tile* was also decided prior to the Supreme Court's decision in *Begier*. As discussed by the Second Circuit Bankruptcy Appellate Panel in *Carrozzella*:

> The Supreme Court, in *Begier v. I.R.S.,* implicitly addressed the question of whether the receipt of payments from a commingled account constitutes re-segregation thereby relieving the recipient of having to trace its property. 496 U.S. 53, 110 S. Ct. 2258, 110 L.Ed.2d 46 (1990). In *Begier,* the I.R.S. received tax payments from a corporate debtor's general operating account during the ninety-day preference period. The Court was faced with the question of whether or not the payments to the IRS constituted payments from property of the estate, and thereby recoverable by the trustee, or merely IRS assets being held in trust by the debtor, and thereby unrecoverable by him. The Court ultimately decided that the payments constituted trust assets but, because the trust was created by an act of Congress, it had unique attributes unlike common law trusts. The primary attribute that made the trust unique was that the IRS was not required to trace its property. Significantly, the Court based its holding on its interpretation of 26 U.S.C. § 7501 (1998) and not on the fact that the funds had already been transferred to the IRS. Since such a holding, which involved extensive legislative history analysis, is more complicated than the proposition upon which the Bankruptcy Court made its determination, it is reasonable to conclude that the Supreme Court implicitly rejected the notion that the making of payments from a commingled account affects re-segregation.

*In re Carrozzella & Richardson*, 247 B.R. at 601.

[3] Although no affidavit or other evidence was presented to support this assertion, the Trustee suggests in her reply brief that creditors in this bankruptcy case include materialmen and suppliers who were entitled to but did not receive payment from trust funds paid to the Debtor on their behalf. (Trustee's Rep. Br. 3.) ("Kendall was one of the preferred contractors who received payment before the Debtor closed its doors. . . . [Kendall's] position, and the bankruptcy court's opinion . . . leaves no recourse for the less fortunate contractors who were not paid before the money ran out.")

proof that a trustee has under § 547(g)[4] of the Bankruptcy Code and on *Little v. Little (In re Little)*, 163 B.R. 497 (Bankr. E.D. Mich. 1994). *Little* was a nondischargeability action under 11 U.S.C. § 523(a)(4) against a debtor/contractor who had failed to account for trust funds under the MBCFA. The *Little* court concluded that because a contractor in possession of trust funds has a duty under Michigan law to account to beneficiaries for the disposition of such funds, when the contractor becomes a debtor in bankruptcy it has the burden in a nondischargeability action to prove that no defalcation occurred. *Id*. at 500-01. The bankruptcy court herein, in what it perceived as a logical extension of *Little*, concluded that a contractor's duty to account for trust funds becomes the duty of its bankruptcy trustee. (Trustee's App. 0349.)

Undeniably, a bankruptcy trustee has a duty to collect property of the estate and to be accountable for any property collected. *See* 11 U.S.C. § 704(a)(1) and (2).[5] However, there is simply no authority for the conclusion that a trustee bears the burden of establishing a negative: that a debtor contractor's commingled general bank account funds are *not* trust funds or that a preference defendant, paid from a debtor's general bank account, was paid with non-trust funds. The courts considering the MBCFA have consistently recognized that a party claiming a trust interest in a contractor's commingled funds has the burden of identifying or tracing the funds. *See Blair v. Trafco Prods., Inc.*, 369 N.W.2d 900, 903 (Mich. App. 1985) (citing *Burtnett v. First Nat'l Bank of Corunna* (38 Mich. 630, 635 (1878)); *In re Philip Servs. Corp.*, 359 B.R. at 628 ("the trust beneficiary must be able to trace the funds"); *In re Mich. Boiler & Eng'g Co.,* 171 B.R. at 569 (party claiming trust fund interest under MBCFA in the debtor's commingled bank account "must trace the

_____

[4] Section 547(g) provides:

> For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section.

[5] "The trustee shall—
(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest; [and]
(2) be accountable for all property received[.]" 11 U.S.C. § 704(a).

trust funds through the commingled account and it is not enough to simply show that trust funds went into the commingled account"). Additionally, as the Sixth Circuit recognized in *First Federal* under Michigan law:

> Once the trust relationship has been established, one claiming as a cestui que trust thereunder must identify the trust fund or property in the estate, and, if such fund or property has been mingled with the general property of the debtor, sufficiently trace the trust property. If the trust fund or property cannot be identified in its original or substituted form, the cestui becomes merely a general creditor of the estate.

*First Federal*, 878 F.2d at 915 (quoting *Collier on Bankruptcy* ¶ 541.13 (15th ed. 1988)) (court concluding that because the defendants had not attempted to trace their trust funds beyond the deposits into the debtor's commingled bank account, the trust funds "irretrievably lost their identity").

The Trustee herein met her burden under § 547(g) of establishing that the transfer was "of an interest of the debtor in property" when she introduced evidence that Kendall was paid from the Debtor's general, commingled bank account—an account that was not in any form or fashion designated as a trust account. *See In re Bullion Reserve of N. Am.*, 836 F.2d at 1217 n.3 (because preference recipient received bullion purchased from debtor's commingled bank accounts under debtor's control, it was presumed that distribution was property of the debtor; presumption could be overcome by recipient tracing funds through debtor's commingled accounts); *In re Carrozzella & Richardson*, 247 B.R. at 602 (finding that once the trustee establishes that the creditor was paid with funds from the debtor's commingled general account which the debtor used for all manner of expenditures, the burden of proof shifted to the defendant to prove that the debtor only had legal title and to trace its interest in the commingled funds). As such, the bankruptcy court erred in holding that the Trustee had failed to present a prima facie case under § 547(b) that Kendall was paid with property of the Debtor.

Moreover, it is clear that the tracing in this context involves application of the "lowest intermediate balance rule." As described in *First Federal*:

> The situation frequently occurs where trust funds have been traced into a general bank account of the debtor. The following general principles have been applied. The bankruptcy court will follow the trust fund and decree restitution where the amount

of the deposit has at all times since the intermingling of funds equaled or exceeded the amount of the trust fund. But where, after the appropriation and mingling, all of the moneys are withdrawn, the equity of the cestui is lost, although moneys from other sources are subsequently deposited in the same account. In the intermediate case where the account is reduced to a smaller sum than the trust fund, the latter must be regarded as dissipated, except as to the balance, and funds subsequently added from other sources cannot be subject to the equitable claim of the cestui que trust. If new money is deposited before the balance is reduced, the reduction should be considered to be from the new money and not from monies held in trust. This analysis may be referred to as the lowest intermediate balance test.

*First Federal*, 878 F.2d at 916 (citing *Collier on Bankruptcy* ¶ 541.13 (15th ed. 1988)).

Lastly in this regard, we examine the bankruptcy court's conclusion that notwithstanding the evidence in this case that Kendall in some instances was paid with funds the Debtor borrowed from Bank One, the monies paid to Kendall were trust funds as a matter of law. The bankruptcy court cited no authority for this conclusion other than a policy one, that contractors should not be able to strip trust funds of their status by using them for other purposes. The Trustee argues that the bankruptcy court's conclusion was erroneous because the MBCFA only provides that construction funds paid to a contractor are held in trust and nothing in the Act creates a "skipping" or floating trust such that if the contractor uses the trust funds for another purpose and borrows to replace them the borrowed funds regain trust status.

In response, Kendall argues that the bankruptcy court's holding that a contractor is unable to strip trust funds under the MBCFA of their status is supported by *In re Johnson*, 691 F.2d at 249 (debtor who knowingly used monies in building contract fund for personal use while debt to his supplier remained unpaid had created debt nondischargeable as defalcation by fiduciary); *B.R. Farnell Company v. Monahan*, 141 N.W.2d 58 (Mich. 1966) (holding that a contractor who has not paid materialman holds funds received in payment for work performed under contract as trust fund for benefit of materialman and such funds do not constitute part of contractor's estate); *Huizenga v. United States*, 68 F.3d 139 (6th Cir. 1995) (holding that payments from a building contract fund to subcontractors could not be set aside as preferential transfers because the subcontractors held title to the money in the building contract fund as trust beneficiaries under the MBCFA); *Official Committee of Unsecured Creditors of the IT Group, Inc. v. Anderson Equipment Company (In re IT*

15

*Group, Inc.)*, 332 B.R. 673 (Bankr. D. Del. 2005) (holding that payments made under a New York lien law were part of a statutory trust and could not be avoided as preferential). These cases, however, are inapposite to the case at hand. None involved a commingling of trust funds with the debtor's general funds such that tracing was an issue.

In the *Philip Services* decision, rendered after the bankruptcy court herein made its ruling, the bankruptcy court considered facts identical to these in the present case: a preference defendant paid with the debtor's borrowed funds because all of the debtor's accounts receivable, including trust funds under the MBCFA, had been swept daily by the bank to a zero balance. *In re Philip Servs. Corp.*, 359 B.R. at 627. The *Philip Services* court rejected the defendant's argument that it had been paid with trust funds rather than property of the debtor, observing that neither tracing nor the lowest intermediate balance analysis would aid the defendant since it had been paid with borrowed funds. *Id.* at 629. *Cf. In re Fabricators Supply Co.*, 292 B.R. 531 (Bankr. D.N.J. 2003) (daily account sweep by bank of debtor's accounts receivable account for application to debtor's line of credit obligation constituted disbursements for which the debtor had to pay quarterly fees to the United States trustee under 28 U.S.C. § 1930(a)(6)).

The Sixth Circuit does suggest in *First Federal* that the exact trust funds do not have to be traced from owner to contractor to beneficiary, but that instead the trust funds can be identified in a "substituted form." *First Federal*, 878 F.2d at 915 ("any party seeking to impress a trust upon funds for purposes of exemption from a bankrupt estate must identify the trust fund in its original or substituted form") (citing *In re Bullion Reserve of N. Am*, 836 F.2d at 1218; *Elliott v. Bumb*, 356 F.2d 749, 754 (9th Cir. 1966)). The court of appeals did not explain what is meant by "substituted form," although the *Bullion Reserve* case cited by the court involved a beneficiary's investment of funds with the debtor for the purpose of purchasing bullion on the beneficiary's behalf, with the debtor conveying the bullion to the beneficiary during the preference period. The bankruptcy trustee was able to avoid the transfer of the bullion because the beneficiary was unable to trace the funds it paid to the debtor, arguably trust funds, to the bullion ultimately received by the beneficiary. *In re Bullion Reserve of N. Am*, 836 F.2d at 1218.

On the subject of tracing funds that have changed form, the encyclopedia *Corpus Juris Secundum* states:

> The cestui que trust may follow the trust property through any change in form or species and have the trust attached to the property in its new form; thus, the proceeds which the trustee has received for the trust property may be claimed as subject to the trust.
>
> While it has been said that the right to follow and recover trust property first existed only with reference to the identical trust property in its original form, which it was necessary to identify, it is now well settled that the cestui que trust may follow the trust property through any change in form or species and have the trust attached to the property in its new form, for the product of the trust property follows the nature of the original thing itself. Thus, the cestui que trust may generally claim, as subject to the trust, any proceeds which the trustee has received for the trust property, or any property into which the trustee has invested or converted the trust property, or the proceeds thereof, *provided, of course, the property claimed may be identified as the product into which the trust property may be traced*.

90A C.J.S. *Trusts* § 672 (2007) (citations omitted) (emphasis supplied). This passage indicates that as long as the trust funds can continue to be traced, notwithstanding a change in form, the cestui que trust follows. Thus, support for Kendall's argument that the loaned funds were merely a replacement of the original trust funds does exist. The facts of *First Federal* indicate, however, the difficulty, if not impossibility, of tracing trust funds through a debtor's commingled account that includes funds from multiple sources:

> [A]ppellants have not attempted to trace their funds beyond the deposits into the commingled Salem Central Account, which evidence, standing alone, is insufficient to support their constructive trust theory of recovery. Since the purported constructive trust consisted of money, which had no extrinsic identifiable characteristics of its own, that was initially deposited and commingled into the Salem Depository Account with unidentifiable funds received from innumerable and diverse other sources and daily redeposited and again commingled in the negative balance Salem Central Account, appellants' funds irretrievably lost their identity and "tracing" became a futile pursuit as a result of which the controversial payments here in issue became avoidable transfers within the meaning of 11 U.S.C. § 547(b) and 550(a). [Citation omitted.]

*First Federal*, 878 F.2d at 915-16. Additionally, the court of appeals' discussion of the lowest intermediate balance test suggests that merely replacing the funds in a commingled general account with other general funds is insufficient: "[W]here, after the appropriation and mingling, all of the

17

moneys are withdrawn, the equity of the cestui is lost, although moneys from other sources are subsequently deposited in the same account." *Id*. at 916.[6]

Based on the foregoing, we must conclude that the bankruptcy court erred in holding as a matter of law that the funds loaned by Bank One to the Debtor, from which Kendall was paid, constituted Kendall's trust funds in a substituted form. The cited authorities clearly require the beneficiary to trace the trust funds into their substituted form so a legal conclusion in this regard by the court was inappropriate. Moreover, although not fully developed, the facts of the case suggest that tracing the trust funds into a substituted form of loaned funds would be a near impossibility because any trust funds received on Kendall's behalf were commingled with other trust funds and the Debtor's personal funds in its one general account, such that Kendall's funds lost their identity.

Consideration of the arguments and record in this case must be conducted in light of the standards pertaining to a summary judgment motion. Summary judgment is proper when there exists "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In considering a motion for summary judgment, the [bankruptcy] court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Briscoe v. Fine*, 444 F.3d 478, 485 (6th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

The only evidence submitted by Kendall in support of its motion was the affidavit of its credit manager, Ms. Gates, and a copy of the Debtor's accounts payable ledger. This ledger only shows the invoices and Job Account for each check paid by the Debtor to Kendall. It does not establish the

---

[6] *Corpus Juris Secundum* does indicate that there is some authority for the proposition that funds from another source added to a depleted trust fund will be treated as property of the trust fund if "the trustee has added the subsequent sums with the intent of restoring the trust funds, or the circumstances are such that the restoration can be presumed to be of the amounts wrongfully withdrawn." 90A C.J.S. *Trusts* § 677 (citing *In re Gottfried Baking Co.*, 312 F. Supp. 643 (S.D.N.Y. 1970); *In re Hackett's Will*, 46 N.Y.S.2d 415 (Sur. Ct. 1944)). Although we have seen no indication that Michigan courts would agree with this proposition, it would appear helpful to a trust beneficiary only if the trust funds remain easily traceable, such as where a debtor replaced funds depleted from a single trust account. It would appear to be of limited utility when applied to a commingled bank account involving multiple trusts and a debtor's non-trust funds, such as in the present case.

18

source of the Debtor's payment. Although Ms. Gates states in her affidavit that the president of the Debtor advised her that the Debtor paid Kendall after it received payment from the contracting parties, this testimony was insufficient to establish that Kendall was paid with the trust funds since Kendall was paid from the Debtor's general account and Kendall failed to conduct the required tracing. Summary judgment in favor of Kendall was inappropriate because a genuine issue of material fact existed as to whether Kendall was paid with property of the Debtor.

## V. CONCLUSION

For the foregoing reasons, the order of the bankruptcy court granting summary judgment in Kendall's favor is REVERSED and this adversary proceeding is REMANDED for further proceedings consistent with this opinion.